OPINION
{¶ 1} In this case, Shirley Rambo Moore appeals from a trial court decision dismissing her motion to set aside a final decree of divorce. Moore's former husband, Ernest Rambo, also cross-appeals from the trial court's subsequent refusal to award attorney fees under R.C. 2323.51, which governs frivolous conduct.
 {¶ 2} In support of her appeal, Moore raises the following assignments of error:
 {¶ 3} "I. The trial court erred by failing to find that it is more likely than not that Plaintiff was a nonresident of Ohio when he filed for divorce from Shirley Moore in 1968.
 {¶ 4} "II. The trial court erred for [sic] failing to find that it is more likely than not that Plaintiff failed to exercise reasonable diligence in properly notifying Shirley Moore of his petition for divorce as required by Ohio Revised Code § 3105.06."
 {¶ 5} The cross-appeal presents the following assignments of error:
 {¶ 6} "I. The trial court's failure to find Appellant's motion untimely was against the weight of the evidence.
 {¶ 7} "II. The trial court's denial of Cross-Appellant's motion for attorney fees was arbitrary, unreasonable, and against the weight of the evidence."
 {¶ 8} After considering the entire record, we find no error on the part of the trial court. Accordingly, the judgments will be affirmed.
 I {¶ 9} The circumstances of the present case are not flattering to anyone involved. On one side stands a man who married several times and fathered five children, none of whom did he apparently support. In fact, when asked at a deposition about his children, he could not remember all their names, and forgot one child entirely. On the other side is a woman who was so little concerned with her marital status and her children's need for support that she waited more than thirty years to investigate and challenge the divorce decree. Support was surely needed, as the children were given up, at least in part, because the mother could not support them. And finally, behind the scenes is an unrelated family, scheming to increase its wealth. The common denominator in this case, as in many, appears to be greed.
 {¶ 10} According to the record, Ernest Rambo and Shirley Moore were married in April, 1962, in Columbus, Indiana. They lived in Columbus for a while, and had three children between 1962 and 1966. However, at some point, Rambo began working in Dayton, Ohio. The precise date or even the year is unclear, due to the passage of time and both parties' imperfect recollection. In the beginning, Rambo commuted between Dayton and Indiana. That ended shortly, however, and Rambo then began living in Dayton. Ultimately, on March 8, 1968, Rambo filed for divorce in Montgomery County, Ohio. The divorce itself was granted in April, 1969, after non-resident service by publication was made on Moore. Rambo subsequently married and divorced several more wives over the next 29 years.
 {¶ 11} In 1998, Rambo's fifth wife, Jane Townsend Rambo, was killed in an auto accident, less than six months after they were married. As a result of Jane's death, Rambo received significant insurance proceeds and also inherited substantial property that had belonged to Jane. Jane's family was quite wealthy and apparently did not take kindly to the inheritance. A private investigator was hired, and he eventually located the Ohio divorce decree and Moore.
 {¶ 12} Over 31 years after the original divorce decree was issued, Moore filed a motion to set the decree aside. In the motion, Moore claimed that Rambo failed to comply with Ohio residency requirements, that she was not properly served in the divorce action, and that Rambo had perpetrated a fraud on the court. After a hearing, the trial court dismissed the motion.
 {¶ 13} Subsequently, Moore appealed to our court, and we reversed. However, we remanded the case only for limited purposes. We found that the trial court may have incorrectly required Moore to prove her case by "clear and convincing" evidence, rather than by a preponderance of the evidence. See Rambo v. Moore, Montgomery App. No. 19050, 2002-Ohio-1305, ¶¶ 19-24. As a result, we sent the case back so that the trial court could apply the correct burden of proof. Id. at ¶ 24.
 {¶ 14} Our opinion also discussed and overruled two assignments of error that were based on alleged flaws in the trial court's findings on residency and service of process. However, we conditioned these rulings on the trial court's action on remand. Id. at ¶¶ 12 and 17. In this regard, we said that we believed Moore had failed to prove either lack of subject matter jurisdiction or insufficient service of process by a preponderance of the evidence. Nonetheless, we felt compelled to remand, since the trial court should have the first chance to make these kinds of decisions. Id. at ¶ 24.
 {¶ 15} On remand, the trial court filed a very brief decision, stating simply that Moore failed to prove her case by a preponderance of the evidence. The next day, the court filed a second decision rejecting Rambo's request for $28,520.96 in attorney fees. Among other things, the court found that the action was not frivolous because Moore never knew "for sure" that she was divorced. The court also focused on the fact that although Moore did not want the marriage reinstated, she did want to recover whatever she was entitled to receive. Finally, the court did not place significant weight either on Moore's failure to prevail, or on the fact that a third party had paid Moore's attorney fees.
 {¶ 16} As we mentioned, Moore claims in the first assignment of error that the evidence she offered satisfied the preponderance of the evidence standard. In this respect, Moore points to various items, like inconsistent testimony on residency in a 1999 deposition taken of Rambo in the wrongful death action, and Rambo's failure to obtain a driver's license or to register to vote in Ohio. Notably, we already rejected the latter two points in our prior opinion. Specifically, we attached little importance to failure to obtain an Ohio driver's license or failure to register to vote, in the absence of evidence that all Ohio residents do these things. 2002-Ohio-1305, ¶ 10.
 {¶ 17} In our prior opinion, we also noted that inconsistencies in Moore's testimony were more substantive than Rambo's failure to remember precise dates. Id. at n. 2. We still agree with that observation. Rambo's deposition was taken in July, 1999, in connection with a wrongful death action he had filed concerning the death of his fifth wife, Beverly Jane (Jane) Townsend Rambo. According to the record, Rambo married Moore in April, 1962, and their divorce was final in April, 1969. Rambo then married Mary Etta Dillon in August, 1969, and divorced her on August 3, 1970. Subsequently, Rambo married Linda Grant on August 8, 1970. Grant and Rambo were divorced in 1974 or 1975. Rambo then married another woman, Rose, from whom he was divorced in 1983.
 {¶ 18} Rambo married Jane Townsend in July, 1998. In October, 1998, Jane was killed while riding in a car with her mother, and Rambo filed a wrongful death action. In a 1999 deposition in that case, Rambo confused some dates and also testified, incorrectly, that he was divorced from Moore in Columbus, Indiana, rather than Dayton, Ohio. However, Moore's inconsistencies in testimony were far more telling. For example, Moore testified that she saw Rambo only once in a great while (perhaps every two or three months) between 1969 and 1974. In 1975, Rambo and his sister came into a bar where Moore was working. Despite the fact that Rambo had been gone for at least five years, Moore insisted that she never inquired about their marital relationship.
 {¶ 19} Moore's testimony was that she never knew "for sure" if she was divorced. However, she did admit that she heard that Rambo had gotten married to Mary Dillon (the 1969 marriage). Moore assumed Rambo was going to marry Dillon because Rambo told her that Dillon's father had gotten a shotgun after him one time to divorce Moore and marry Dillon. (The "shotgun" reference was to the fact that Dillon delivered Rambo's out-of-wedlock child in August, 1968, about eight months before the Rambo-Moore divorce was final).
 {¶ 20} Furthermore, in 1993, Moore filed a petition to change her name from Rambo to Moore. The petition, which was verified by Moore, alleged that Moore had been divorced in April, 1969 (which, coincidentally, was the correct month and year of the original divorce decree). Moore also stated under oath in an Indiana court, that the content of her name change petition was true. From 1993 on, Moore discontinued using the name Rambo, except in some affidavits she filed in the current action. She also filed tax returns for many years, listing her marital status as "single."
 {¶ 21} Under the circumstances, we do not think the trial court erred in finding that Moore failed to prove lack of subject-matter jurisdiction or insufficient service of process. To the contrary, Rambo testified that he lived in Dayton during the relevant time period. He also testified that the address he gave the divorce court was Moore's last known address. As we noted in our prior opinion, the record contained sufficient evidence to support these assertions. See 2002-Ohio-1305, ¶¶ 8 and 16. And, any evidence Moore presented to the contrary was outweighed by her lack of credibility. Consequently, the trial court correctly found that Moore failed to sustain her burden of proof.
 {¶ 22} Based on the above discussion, the first and second assignments of error are without merit and are overruled.
 II {¶ 23} Having disposed of Appellant's assignments of error, we now turn to the cross-assignments of error. In the first cross-assignment of error, Rambo claims that the trial court should have found Moore's motion untimely. Since the judgment in favor of Rambo is being affirmed, we do not really need to address this cross-assignment of error.
 {¶ 24} We should point out, however, that Rambo is incorrect when he says that the trial court did not find the motion for relief untimely. To the contrary, the trial court stressed that a party seeking relief must act in a timely manner. The court then stated that shortly after the divorce, Moore had reason to believe that Rambo had obtained a divorce, but failed to investigate. In our opinion, this clearly indicates that the trial court felt the motion was untimely. For the reasons already discussed, we agree with this finding.
 {¶ 25} To prevail on a Civ.R. 60(B) motion, a party must show that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTE Automatic Elec., Inc. v. ARCIndustries, Inc. (1976), 47 Ohio St.2d 146, paragraph two of the syllabus. We review Civ.R. 60(B) decisions for abuse of discretion.Strack v. Pelton, 70 Ohio St.3d 172, 174, 1994-Ohio-107. Since Moore knew about the divorce shortly after it was obtained, but waited 31 years to investigate or challenge the decree, the trial court did not abuse its discretion in finding that the delay was unreasonable.
 {¶ 26} Thus, while Rambo is correct that the motion to set aside the judgment was untimely, he is incorrect in claiming that the trial court failed to make a finding on timeliness. Accordingly, the first cross-assignment of error is without merit and is overruled.
 III {¶ 27} In the second cross-assignment of error, Rambo contends that the trial court's denial of attorney fees was arbitrary, unreasonable, and against the manifest weight of the evidence. Rambo's fee request was brought under R.C. 2323.51, which governs frivolous conduct. At the time the motion for relief from judgment was filed, R.C.2323.51 defined frivolous conduct as "conduct of a party to a civil action or of his counsel of record that satisfies either of the following: (a) It obviously serves merely to harass or maliciously injure another party to the civil action; [or] (b) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."
 {¶ 28} We have previously said that a frivolous claim is one "that is not supported by facts in which the complainant has a good-faith belief, and which is not grounded in any legitimate theory of law or argument for future modification of the law." Jones v. Billingham
(1995), 105 Ohio App.3d 8, 12. In frivolous conduct situations, we defer to the trial court, since it has "the benefit of observing the course of the proceedings and is familiar with the parties and attorneys involved."Mason v. Meyers, 140 Ohio App.3d 474, 477-78, 2000-Ohio-1698. Accordingly, the standard we apply is abuse of discretion, which allows us to reverse only if the trial court acted unreasonably, arbitrarily, or capriciously. Id.
 {¶ 29} The trial court in this case held a hearing on the fee request, and admitted the deposition of Shirley Moore and some exhibits. The court had also previously heard evidence on the merits of the motion to set aside the judgment. After the court considered the evidence, it found that attorney fees were not warranted. First, the court focused on an unanswered question about the original divorce, i.e., why the decree was not granted for a full year after the original petition was filed. This fact seemed to have made the court somewhat suspicious about the original divorce action. However, the court also noted that the original trial judge and Rambo's attorney were both dead, and the only surviving record contained the necessary jurisdictional facts.
 {¶ 30} The trial court was also clearly disturbed by the fact that Moore never received any child support from Rambo, even though Rambo knew that the divorce decree required him to pay support — at least for the one child who was still in Moore's custody and had not yet been adopted or given away. Additionally, the court found that although Moore had reason to believe she was divorced, this was not reason enough to find the action frivolous. Specifically, Moore obviously did not have knowledge of the terms and conditions of the decree. And finally, the court placed little reliance on the fact that third parties had paid Moore's attorney fees, since this is a common practice in domestic relations cases.
 {¶ 31} Rambo claims the trial court abused its discretion because Moore admittedly had no interest in Rambo, and, in fact, preferred being divorced (which was already the effect of the original decree before the challenge). Furthermore, Moore held herself out for many years as being divorced. Rambo also relies on ulterior motives for the present litigation, which was intended to further the interests of third parties.
 {¶ 32} Although we are troubled by some aspects of this case, and may have reached a different result than the trial judge, we cannot say the decision was an abuse of discretion. According to the testimony at trial and in Moore's deposition, Moore had no contact with Rambo between 1974 and 2000, other than one phone call in 1989 or 1990, and a Christmas card in the same time frame. During this 26 year period, Moore conducted herself as a single person — she lived with another man for about 6 years, changed her name, alleging that she was divorced, and listed herself as single on tax returns. Moore had no thought of looking into her divorce until early February, 2000, when she was visited by Bill Hagler, who was a private investigator.
 {¶ 33} Hagler explained that he was investigating to see if Moore was still married to Rambo. Hagler told Moore about the wrongful death action involving Jane Townsend and said he thought that Rambo had illegally married Jane. Hagler pointed out that if Rambo was not legally divorced, then he had illegally married Jane Townsend, as well as several other wives. In that case, Jane's family would be able to recover property that Rambo had inherited, and insurance proceeds Rambo had recovered as Jane's surviving spouse. The amounts involved were apparently very significant. Moore was under the impression that Hagler had been retained by Margaret Townsend, who was Jane Townsend's sister and the daughter of Leon and Margaret Townsend, Sr.
 {¶ 34} Shortly after Moore met with Hagler, she consulted with Wayne Stephan, an attorney in Dayton. Hagler had previously met with Stephan and had asked him to represent Moore. Hagler had also given Stephan a $2,500 retainer. Stephan's hourly rate was established by an Atlanta attorney who was acting on behalf of Leon and Margaret Townsend. Stephan worked on the case for several months and was then replaced on October 20, 2000, by attorney, James Kirkland. The same day, Kirkland filed Moore's motion to set aside the 1969 divorce decree.
 {¶ 35} At about the same time, or shortly thereafter, Jane's parents, Margaret and W.L. (Warner Leon) Townsend, filed a petition in Georgia against Rambo, claiming that they were the proper parties in interest to seek relief for Jane's wrongful death. The attorney representing the Townsends in that action was Jeffery Haskins, who was Margaret Jr.'s "significant other." On May 22, 2001, the Georgia action was stayed by consent order, pending resolution of Moore's motion in the Ohio divorce case.
 {¶ 36} By the time of the original trial in the Ohio case (August, 2001), attorney fees of about $14,658 had been paid to Kirkland. However, Moore had not paid any fees out of her own pocket, either to Kirkland or to Stephan. Moore was certainly not in a position to pay any fees, as she earned very little and was in financial difficulty.
 {¶ 37} Although the above facts are troubling, the trial judge appears to have accepted Moore's testimony that she was never sure that she was divorced and initiated the present action for the purpose of obtaining any benefits she might be due as a result of her marital status. Since the trial judge is in the best position to judge credibility, we will defer to that finding. And, in the final analysis, justice has probably been done, since no party to this drama occupies a very commendable position. A man who abandoned his children and paid no support becomes wealthy through no achievement or effort of his own. His ex-wife, who was so indifferent to her children's needs that she failed to pursue support for 31 years, enters stage right to see what she can collect. In turn, the ex-wife is set in motion and financed by people who are already wealthy, but are willing to spend thousands of dollars to obtain even more money and property. As we said earlier, this case is about greed, not justice. The parties who deserve justice are the children, and they are not likely to get it.
 {¶ 38} Accordingly, since the trial court did not abuse its discretion in denying attorney fees, the second cross-assignment of error is without merit and is overruled.
 {¶ 39} Based on the preceding discussion, the assignments of error and cross-assignments of error are overruled. The judgments of the trial court dismissing the motion to set aside the divorce decree, and denying attorney fees are affirmed.
GRADY, J., and YOUNG, J., concur.